UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

OCT 0 7 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Margarita Zayas )
2604 Ellen Ave. )
Rockford, Illinois 61101 )
(Name of the plaintiff or plaintiffs) )
)
v. )
Rockford Memorial Hospital )
2400 N. Rockton Ave. )
Rockford, Illinois 61103 )
(Name of the defendant or defendants) )

CIVIL ACTION

NO. 11 C 50 2 90

Reinhard

# COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is __Margarita Zayas__ of the county of __Winnebago__ in the state of __Illinois__.

3. The defendant is __Rockford Memorial Hospital__, whose street address is __2400 N. Rockton__,
(city) __Rockford__ (county) __Winnebago__ (state) __Illinois__ (ZIP) __61103__

(Defendant's telephone number) __(815)__ - __971-5000__

4. The plaintiff sought employment or was employed by the defendant at (street address)
__2400 N. Rockton__ (city) __Rockford__
(county) __Winnebago__ (state) __Illinois__ (ZIP code) __61103__

5. The plaintiff [*check one box*]

   (a) ☐  was denied employment by the defendant.

   (b) ☐  was hired and is still employed by the defendant.

   (c) ☒  was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) April , (day) 22 , (year) 2011 .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

   (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐ *has not* filed a charge or charges against the defendant ☒ *has* asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

   (i) ☒ the United States Equal Employment Opportunity Commission, on or about (month) June (day) 27 (year) 2011 .

   (ii) ☒ the Illinois Department of Human Rights, on or about (month) September (day) 20 (year) 2011 .

   (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days.**

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

   (a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year)_____

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month)_____ (day)_____ (year)_____.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ YES ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ YES ☐ NO, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue*.

(b) ☒ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) July (day) 9 (year) 2011 a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's *[check only those that apply]*:

(a) ☒ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

  (c)☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

  (d)☒ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

  (e)☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

  (f)☐ Religion (Title VII of the Civil Rights Act of 1964)

  (g)☒ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

  (a)☐ failed to hire the plaintiff.

  (b)☒ terminated the plaintiff's employment.

  (c)☐ failed to promote the plaintiff.

  (d)☐ failed to reasonably accommodate the plaintiff's religion.

  (e)☐ failed to reasonably accommodate the plaintiff's disabilities.

  (f)☒ failed to stop harassment;

  (g)☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

  (h)☐ other (specify):_____

4

13. The facts supporting the plaintiff's claim of discrimination are as follows:

    I was employed at Rockford Memorial Hospital for 10.5 years as an ultrasound technologist. In March of 2009 my manager Larry Griesman singled me out in an ultrasound staff meeting. I felt ridiculed after he said " Do you think everyone is out to get you Margarita?" Prior to that incident I had been going to him with complaints regarding my co workers. I told him about a racial comment made to me by Pam Hodge in front of two other co workers. When I asked

    (see Attached)

14. [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. [X] YES  [ ] NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a) [ ]  Direct the defendant to hire the plaintiff.

    (b) [X]  Direct the defendant to re-employ the plaintiff.

    (c) [ ]  Direct the defendant to promote the plaintiff.

    (d) [ ]  Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e) [ ]  Direct the defendant to reasonably accommodate the plaintiff's disabilities.

    (f) [ ]  Direct the defendant to (specify): _____

_____

_____

_____

_____

_____

(g) [X] If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) [X] Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

*Margarita Zayas*

(Plaintiff's name)

Margarita Zayas

(Plaintiff's street address)

2604 Ellen Ave.

_____

(City) Rockford (State) Illinois (ZIP) 61101

(Plaintiff's telephone number) ( 815 ) – 988-6700

Date: 10-7-2011

Pam if she had attained a translator for a spanish speaking patient she had performed an exam on, she said "If they are in this country, they need to learn how to speak english." I also told him about another ultrasound tech Lisa Porter who performed a transvaginal exam on a 13 year old spanish speaking patient. I performed a pelvic ultrasound on the same patient as an out-patient so I knew her history. She spoke only spanish so since I speak spanish also, I was able to communicate with her. I did not perform a transvaginal exam on her because I could obtain a quality exam without one. Normally we would not do a transvaginal exam on a young girl unless absolutely necessary especially if she has never been sexually active. When Lisa came in on call through the emergency room for this patient she said the patient told her that she was sexually active when I know for a fact that the patient did not speak english. Both exams were done about a week apart.

The following week I asked to meet with Rozene Smith (Director HR & Diversity). I was under the impression because of her job title that she handled these racial matters but I am not sure what her job description is. She agreed to meet with me. I expressed my concerns about my manager publicly taking a side and ridiculing me in front of my co workers at the ultrasound tech meeting. I felt that I could not go to him anymore. I no longer trusted him. After speaking to her not too much changed.

On 10-2-09 I emailed Evelyn Pagan ( Sr. Director Risk Management ). I decided to ask her advise on how to address issues with Larry Griesman regarding my co workers. I told her about the incidents that had occurred and mainly I wanted someone to know what was going on. I was afraid of losing my job. My co workers could say anything about me and my manager would not question whether it was true or not at least that is the impression I had after he publicly sided with my co workers. She recommended a book on communication skills. I bought the book CRITICAL CONVERSATION but I didn't get to use what I learned right away because on 10-9-09 I had surgery and I was off of work for 8 weeks. I returned to work on 12-7-09.

The problems with my co-workers continued when I returned. I had some issues I wanted to address with Larry Griesman. I emailed him and asked to meet with him. I asked to have a mediator present. He asked me what it was about. He seemed hesitant to meet with me. There was an email dated 1-12-10 that I have a copy of where he was emailing Mary Kay Hart from Human Resources. He tells her that I want a mediator and that things ran so smoothly when I was off of work for my medical leave. I asked Rozene Smith to be my mediator. She said that she would like to meet with me first so I met with her on 1-14-10 and expressed my concerns. She was trying to find a solution. She asked me about my hours and the day shift hours and she suggested I might start at a later time instead of my start time of 2:30. She said that she was friends with Larry Griesman and during our conversation I thought she was identifying more with him than with me and I told her that in an email after our meeting. At this point I no longer wanted to meet with Larry Griesman because of all the resistance and I decided it was not worth it. I just felt like he wanted nothing to do with me and so I thought if could just go to work, do a great job and ignore insults and keep my job. Around the last week of January Larry Griesman emailed me to see if I would be

interested in having a different starting time as Rozene Smith had suggested. I was more than happy to oblige. My new start time was 4:00 to 12:30 instead of 2:30 to 11:00. The day shift was happy because we rotated a day of the week for taking call third shift. My late start lessened the amount of call ins from the emergency room.

The next major incident was on 1-22-10. I had just started my shift and the day shift people were still there for some reason. We were in the office and the emergency room called about an ultrasound. I took the call so I proceded to get the paper work and there was an ultrasound machine located in the office that we used for portable exams so I updated the machine and unplugged it from the wall. I had noticed that while I was getting my machine ready, Pam Hodge who was sitting in a chair, rolled her chair in front of the ultrasound machine. I was taking my time hoping she would move. When it appeared that she didn't want to move, I said out of frustration "excuse me , if you don't move , I'me going to run you over." I said it in a matter of fact way not as a threat. I said " Can't you see that I need to move this machine?" She then moved but she wanted to continue arguing with me but I did not oblige. I went to the ER to do the patient and just ignored her. The following day Larry Griesman asked me about the incident. There was an official report filed with Mary Kay Hart from human resources. I did not see the report. She claimed that I threatened her and that she was scared of me. I met with Ms. Hart on 1-28-10 regarding the recent incident and I also told about the racial comment that Pam had made and I also told her about the incident involving the 13 year old spanish speaking patient.

On 3-5-10 I sent Larry Griesman an email expressing my concern about hiring a male tech from a temprorary agency. It was not anything personal. He was very nice. He worked at Rockford Memorial on another occasion when he covered for a few months. During the previous work assignment he was performing transvaginal exams without a female chaperone. My coworkers had no problem with that. I saw the potential law suit and I told Mary Kay Hart from Human Resources about it after the email to Larry Griesman.

On 3-29-10 during my evaluation there was a performance improvement action plan. It stated that I had said negative comments but it did not state what the comments were or when or to whom. He just assumed that everything that was told to him was true. I asked for a clarification of what I was being accused of and I answered each one of the allegations in an email.

On 4-1-10 Larry Griesman forwarded an email from Human Resources which announced that Cindy Harrison had accepted the ultrasound position. Cindy Harrison was a former employee who left to work some place else for higher pay. During the time that she was employed, there were allegations made by an african american patient regarding Cindy saying a racial comment. I was surprised that she was rehired. There was an indian woman that worked on the weekends and she applied for the weekday position. I emailed Larry Griesman and asked him if Cindy had applied for the weekend position because I knew that Neesha the indian woman had applied for the weekday position. He said no. They had dedided to go with Cindy for the weekday

8

position since she had more experience. I expressed my disbelief in an email. About a couple of days after that email from Larry Griesman to all the techs I was talking to Neesha the weekend tech on the phone and I thought she already knew that she didn't get the position. Her name was on the email as a recipient. She said she never got the email so I forwarded it to her. We figured out that her name was mispelled on that email but not on other emails.

On 4-9-10 Larry Griesman emailed me asking me to meet him in the human resources department on 4-14-10. I was hesitant to meet with him. I wanted to know what my legal rights were and I sent an email to Mary Kaye Hart on 4-13-10 asking her. She said to show up for the meeting and we could discuss that. She didn't tell me about EEO/ Issue Resolution Committee. I was give a form with all of this information on the day that I was terminated when it was too late. Nobody was looking to resolve anything with me. On the several occasions that we met she was trying to intimidate me into quitting. On one occasion she was discussing with Larry in front of me how he would have no choice but to fire me if I didn't resolve my issues with the others. I flat out refused to quit.

On 4-9-10l I emailed Evelyn Pagan. I wanted to meet with her to ask her about my legal rights but she was not able to meet with me because she was going on vacation. She recommended Kathryn Pearce from Administration. So I emailed Ms. Pearce and I left my phone number to call me during the day. She call me and we had a brief meeting. I told her about everything that was going on. I told her about the discrimination, the Pam incident regarding the machine. I talked with her about the rehiring of Cindy Harrison. I told her about the emails with the incorrect spelling of neesha's name. She suggested that I should quit and I refused to.

I met Larry Griesman and Mary Kay Hart on 4-14-10 as scheduled. Ms. Hart talked to me about inappropriate emails and she also suggested to Larry that he sounded like he was taunting me. So she warned him also.

On 4-28-10 I emailed Ms Hart and I asked to meet with her. I had some concerns about the temp tech that was hired. I had uncovered that he lied about having a female chaperone for a transvaginal exam on one occasion when he was on call and on another occasion he was the late day shift person. I had walked in the room to let him know that I was leaving the department to do a patient and he was do a transvaginal exam on an outpatient. I asked him about it after and he said that he offered to get a chaperone but the patient refused. She asked me if I wanted her to tell Larry about it. I don't think she appreciated me bringing it to her attention. I was confused by her attitude and I emailed her about the meeting.

About Cindy Harrison. She was the late day shift person. When she was hired she told me that she left a better paying job to come to Rockford Memorial Hospital because it was the right thing to do. She said she was sought out. I sent Larry Griesman an email about Cindy on 6-30-10. I described an incident where Cindy looked like she wanted to hit me. I think we had pending patients at the time she was going to

leave to go home. She was supposed to leave at 4:30 but when the 4:00 tech left for the day she also wanted to leave because she said she was told to leave if there was nothing going on. I didn't mind her leaving if it was not busy but often times she did'nt care enough to check before she left. On that day she wanted to argue with me in front of Pam. She started to approach me in a threatening manner and then she walked out of the room.

On March 23, 2011 I sent Larry Griesman another email about Cindy. It was 4:00 and the 4:00 tech was leaving for the day and there was an emergency room patient to do. I was waiting for the 4 oclock patient. Sometimes when they arrive for a pelvic ultrasound their bladder is very full so we try to be ready to do their exam. At about 4:15 Cindy called me from the emergency room and said that she was going to tell Larry Griesman that she should not have to stay to do a patient. She said she refuses to work with anybody like me. I told her that she should quit then. Shen said I should quit because everybody hates me and even the people in the emergency room hate me. By this time the 4 oclock patient had not shown up so I told her to just leave the machine in the emergency room and I would do the patient. When I went to the emergency room she was doing the exam and she told me that she was almost done so I went back to the ultrasound department. When Cindy returned to the department with the ultrasound machine she wanted to continue to argue but I told her that I was not going to stoop to her level. She proceeded to tell me that there was a nurse that didn't want to go to the emergency room because she did not want to deal with me. I ignored Cindy but in my email to Larry I mention that I had suspected that there was a hate group. I was being treated very poorly by people who I didn't even know. Apparently they had a reason to hate me but don't know why because nobody told me. There was an ultrasound student who confided in me that she was told that I ran over Pam's foot with the ultrasound machine. Pam was very popular and I was not. Shortly after the Pam and ultrasound machine incident people started to treat me different. The evening x-ray techs stopped talking to me. They would go into an x-ray room and the security guards would check up on them. I was confused, hurt, and angry. I think they thought I would leave if they treated me bad enough but I refused to quit.

My first written warning was on 7-28-10 for emails sent on 7-20-10 and 7-21-10.
The emails were perceived to be disrespectful.

My final warning was on 10-5-10. It was about an incident that happened on 9-2-10. On the evening of 9-2-10 I was working with Vickey LLoyd. She had just been hired and she was training on second shift. She had been an ultrasound student for 2 years at Rockford Memorial Hospital from Blackhawk Tech. On that evening I was in the ultrasound office with Vickey Lloyd when Kim from housekeeping came in to pick up the trash. We normally closed the door because of patient confidentiality. On that day, I was on the computer when I saw Kim signaling to Vickey as she was exiting the office with the trash. I asked her if the reason she didn't close the door was because I'm Puerto Rican?? It was a question she said no and she went on about her business. We continued our relationship as normal. I had never had a problem with her. I didn't know there was a problem until the following week when Vickey told me that Larry

called her into his office because Kim had filed a complaint about the question I asked. She said Larry is friends with Kim's boss and they are doing an investigation. I asked Kim about it and she said somebody made a big deal out of it and they asked her about it. So I told Vickey that I talked to Kim and she said she was asked about the incident. I suspected that it was Vickey who was the instigator. On that day she had brought a poem about hiring trouble so that they could get a little dose of trouble ever day. She taped it on her locker which was located right above mine. I told her that I liked her poem so much that I took a picture of it. She immediately took it down. She mentioned something about Larry wanting a more cohesive department. I later found out from another ultrasound tech who was traiining with me in the evening that Vickey had been telling everybody on the day shift about the incident. On that final written warning it said that I was treating an environmental service employee with disrespect. Referenced to Puerto Ricans being stereotyped. Repromanded for entering a room to clean when no patients were in there. Makes her feel scared of Margarita , disprespected, and intimidated. Prohibits her from doing her job. The only thing that is true about what was written is that I asked a stupid question. I never prohibited Kim from entering any room. As a matter of fact on that day I was thinking about how Kim was behaving strangely. I was with a patient doing her exam and she came into the room making alot of noise with garbage cans and she is usually very respectful. I didn't say one word to her about it because by this time I was aware of all the games people were playing. So why would she claim to be a afraid of me?? I never threatened her and I never prevented her from doing her job. On the day Larry met with me to give me the final written warning which was 10-5-10 he discussed with me an incident that happened on 9-29-10.

Kim told Larry that on that night I ran into her cleaning cart with a patient cart with a patient on it and I didn't say anything. I didn't answer the allegation when I was in his office. I was very upset. I told my daughter about it and she was very angry. She said they are trying to make you look like some crazy woman smashing carts and she knew that I would never do anything like that. She said she was going to call my boss and she did even though I told her not to. I anticipated that there would be another reason to write me up so I was proactive and I wrote an email to Kim's supervisor Mark Eldon on 10-19-10
asking him to ask his employees not to park their cleaning cart in the middle of the short hallway in Radiology. There had been numerous other occasions when I had to move it out of the way so that I could transport my patient or machine to and from the emergency room. On the 9-29 when the incident happened, most of the liights were turned off. It appeared darker the usual. I was not expecting to find a cleaning cart in that hallway especially since Kim was right there looking at me coming down the hall with my patient on a cart. She should have warned me that her cart was parked there or moved it but she chose to do neither. I carbon copied the email to Larry.

On 10-22-10 I met with Kathryn Pearce. I told her that I was considering seeking legal council because the situation at work had gotten very hostile. I told about security following me around. I told her about the x-ray tech hiding in an x-ray room and the security staff would check up on them. I told her that I felt I had no other choice. She said she could do nothing. I talked with her about an incident involving an emergency

11

room patient. The patient's mother is a nurse who works in the emergency room. The patient came to the emergency room on 9-16-10 and Dr Bredenkamp ordered a pelvic ultrasound on her. After talking to the patient and looking at her previous exams I decided that I would not do a transvaginal exam on her unless it was absolutely necessary. She was only 16 years old and was not sexually active and I was able obtain an adequate exam without doing a transvaginal ultrasound. After I took the patient back to the emergency room, Dr. Bredenkamp called me and as me why I didn't do a transvaginal exam. I told him the reasons I previous stated. He said that the patients mother was very upset because I didn't do a transvaginal exam on her daughter. The following day Larry Griesman called me and asked me if I remember and he mentioned the patients name. He proceded to tell me that the patient's mother wanted to know why a transvaginal exam on her daughter and I told him all the reasons and he said OK and I thought that was the end of that but then a couple of evenings later I talked Dr. Bredenkamp on the phone and he told me that the patients mother was so angry that she wrote a letter to Kathryn Pearce. I pointed out to Ms Pearce at this point that the patient had been seen in the emergency room one month prior and a pelvic ultrasound was performed and a transvaginal was not. Another technologist did her exam. Why did she not complain on that occasion? I also emailed her again 3-16-11. On that date when I clocked in to work my shift at 4 oclock, It looked like the time clock took my picture. There were 2 other employees waiting to go home and they saw the two flashes. I waited to see if it happened to either one of them and it didn't.

On Thursday 4-21-11 Larry Griesman called me while I was on duty and he asked me to meet him on Friday 4-22 11 which was Good Friday a Holy Day. I was terminated for sending emails March 23, April 11th and April 12th. perceived to be unprofessional and disrespectful. At the time I was given my walking papers I was also given a paper stating the hospital policy regarding their EEO/ Issue Resolution committee by Ms Hart. She said a had a certain amount of days to appeal the decision. I did appeal it and on 6-15-11 I got my notice stating that the decision was made to uphold the corrective actions including termination from Rockfsord Health System.

My claim is that I was subjected to discrimination , retaliation, and defamation. In my 10 .5 years of employment, I started to get written up only when I complained about my manager's lack of fair treatment to people outside of my department.

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Margarita Zayas<br>2604 Ellen Avenue<br>Rockford, IL 61101 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

CERTIFIED MAIL 7011 0110 0001 8772 3571

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2011-04076 | Bradley Levine,<br>Investigator | (312) 869-8175 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)     _John P. Rowe_     7/8/11
       John P. Rowe,     (Date Mailed)
       **District Director**

cc:    **ROCKFORD MEMORIAL HOSPITAL**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>440-2011-04076 |
|---|---|---|

Illinois Department Of Human Rights                                and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**Margarita Zayas** | Home Phone (Incl. Area Code)<br>**(815) 969-7438** | Date of Birth<br>**06-07-1955** |
|---|---|---|

Street Address: **2604 Ellen Avenue, Rockford, IL 61101**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**ROCKFORD MEMORIAL HOSPITAL** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(815) 971-5000** |
|---|---|---|

Street Address: **2400 N Rockton Ave, Rockford, IL 61103**

DISCRIMINATION BASED ON *(Check appropriate box(es).)*:
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: **04-22-2011**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I was hired by Respondent on or around October 11, 1999. My most recent position was Ultrasound Technologist. During my employment, I was subjected to a derogatory remark based on my national origin. I was subsequently discharged.

I believe I was discriminated against because of my national origin (Puerto Rican), and retaliated against for engaging in protect activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe I was discriminated against because of my age, 55 (D.O.B. June 7, 1955), in violation if the Age Discrimination in Employment Act of 1967, as amended.

RECEIVED EEOC
JUN 27 2011
CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

Date: **Jun 27, 2011**
Charging Party Signature: *Margarita Zayas*

# ILLINOIS DEPARTMENT OF
# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

August 9, 2011

**Margarita Zayas**
**2604 Ellen Avenue**
**Rockford, IL 61101**

Re: **Margarita Zayas v Rockford Memorial Hospital-120809031**

Dear Complainant:

The United States Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Should you want the Department to consider investigating your EEOC charge, you need to follow these two steps:

**Step 1:** Send the department a letter stating that you want the Department to investigate your EEOC charge. Please include the control number that appears on this letter. Your letter must be sent to the Department within 35 days of receipt of this letter by either of the following methods:

**By Mail:** Your written decision should be sent via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:** You must bring an original and one copy of your letter. The Department will stamp the copy and it will be returned to you for your records.

**Step 2:** Whenever you receive the EEOC's findings from its investigation of your charge, you must send the Department a copy of the findings as directed above. If you have already received the EEOC's findings, you should send the Department a copy of the findings along with your letter requesting that the Department investigate your EEOC charge. Upon receipt of your documents, the Department will mail you a letter containing additional information about your case.

Your failure to timely notify the Department of your decision will result only in the Department closing your file. **This process does not affect the investigation of your charge at EEOC.** If you do not wish to proceed with the Department, you do not need to take any further action.

This letter **does not apply** to any settlement of this charge the parties have made with the EEOC.

**If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.**

ILLINOIS DEPARTMENT OF HUMAN RIGHTS

Rev: 0 7/10

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.state.il.us/dhr