# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50290 | **DATE** | 6/25/2013 |
| **CASE TITLE** | Margarita Zayas vs. Rockford Memorial Hospital | | |

**DOCKET ENTRY TEXT:**

For the reasons set forth below, defendant's motion for summary judgment is granted. Judgment is entered in favor of defendant and against plaintiff. This case is terminated.

*Philip G. Reinhard*

■ [ For further details see text below.]

Electronic Notices.

### STATEMENT - OPINION

Plaintiff, Margarita Zayas, brings this action against defendant, Rockford Memorial Hospital, her former employer, claiming discrimination based on national origin (Puerto Rican) in violation of Tile VII, 42 U.S.C. § 2000e et seq., (Count I) and age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (Count II). Jurisdiction is proper under 28 U.S.C. § 1331. Defendant moves for summary judgment.

Plaintiff was employed by defendant as an ultrasound technician from November 1999 until her termination on April 22, 2011. The decision to hire plaintiff was made by Larry Griesman, the manager of defendant's radiology department. Griesman was plaintiff's direct supervisor during her entire tenure at defendant. Mary Kay Hart is a human resources generalist at defendant. One of her duties is to consult with managers on their decisions to discipline or terminate employees.

On February 25, 2010, Griesman sent plaintiff an email that read as follows: "2 items: 1. When calling in ill, please call at least 1 hour prior to you (sic) scheduled starting time and make sure you speak with someone and not leave a voice mail. 2. It is fine if you leave early but please notify the person on-call so they know they are starting call earlier then (sic) 12:30AM. Thank You for your cooperation in these matters." Plaintiff responded with an email to Griesman, also on February 25, 2010. It states in part: "Item 2. Yesterday I went early for the meeting just as others in the department do. When THEY start earlier, then they leave early. So are you saying that you wanted to pay me over time to attend the meeting, or are you saying that you didn't want me to attend the meeting, or that you wanted me to get somebody's permission to attend the meeting?" Later in the email she says: "Thank You for the opportunity to defend myself?? Or really, is that what this really is? I tried to explain the best I could but I guess once you've taken a side, as you publicly did, then I may as well be speaking spanish."

On April 1, 2010, in response to an email sent by Griesman concerning filling a job position, plaintiff emailed Griesman the following: " Is Cindy taking the weekend position? It was my understanding that Neesha applied for Casey's position. She is very nice and agrees with everything unlike me." Griesman responded: "Cindy was offered the day position. Neesha will remain on weekends. Cindy offered much

more experience." Plaintiff responded by email on April 2, 2010, as follows: "I feel really bad for Neesha because she is so innocent about what is really going on. What she sees outwardly is not the truth. Like I said, academy award performances. I don't buy that she has enough experience to work unsupervised during the weekend, but not enough experience to work during the week. Experience didn't seem to be a factor when hiring Casey. I guess your main job is to make sure a few people are happy, even if it means doing the wrong thing. That has been your job for a very long time now. Too bad."

On April 14, 2010, Hart and Griesman met with plaintiff concerning the emails she had sent to Griesman. Hart cautioned plaintiff about sending inappropriate emails to Griesman.

On July 28, 2010, Griesman issued plaintiff a written warning based on additional emails plaintiff sent to Griesman. These emails were sent July 20 and 21, 2010. These emails include the following: "You don't know when my scheduled weekend is or are we just pretending?;" "Again you answer only what it is convenient for you to answer. This is why I do not trust your sincerity when you say you want improved relations between you and myself. I asked You because you are supposed to be doing the schedule?? You ask the question. Is that your scheduled weekend??? Really?? I asked if I was working the 48 because I was not sure about your previous email where you said you THOUGHT Bob would be ready. Thinking and knowing are 2 different things. The reason things ARE the way they are is because the others are given cart blanc to do what they want as far as being blatantly unfair! Yes I have copies of the schedule. Anybody can see that it is so obvious. They are getting frustrated since they don't have extra time that they had when my starting time was at 2:30. Poor things probably don't have any power in their own homes and they want to come to work and use the power that you give them. It probably makes their day. And then it's turned into a SO NICE thing. I realize there are some things you will not answer because you can't think of something nice and curteous (sic) to say. OK, fine no more trying. I asked about training because since Vicky was hired she must know how to scan and she should not require further training. If she doesn't know how to scan, then she should not have been hired. I think she should be able to handle ALL of the work Neesha handled.;" "I agree. These emails are out of line. I don't get a straight answer when I email you and I don't get a straight answer when I talk with you but I will be there this evening and I know schedules will be changed due to vacations. It would have been just as easy for you to change somebody else (sic) schedule but you chose me. I want to know why you consider me to be so special."

On October 5, 2010, Griesman issued plaintiff a final written warning. The description of the incident giving rise to this final written warning was "Treating an Environmental Services employee with disrespect."

On April 22, 2011, plaintiff was discharged by Griesman. The reason stated for the discharge was several emails sent by plaintiff to Griesman which "were perceived as negative, unprofessional and disrespectful towards her manager and peers.". On March 23, 2011, plaintiff wrote to Griesman: "You are right it is short notice. I have a meeting in the morning and plans after that. You and the gang will have to meet without me. Sorry to disappoint those who had planned for me to be there for whatever motive." On April 11, 2011, she wrote: "I just noticed you scheduled me to works (sic) Easter Sunday???? I'm sure the others knew they were being put on the schedule before it was made up. In the future ask me first before you put my name on the schedule for a weekend that I am not originally scheduled to work. I may have plans. What a coincidence that you would pick MY NAME for that day. Was it a TEAM decision???" On April 12, 2011, she wrote: "I'm sure that everybody else DID think about it being Easter Sunday. They, I'm sure got to pick when they would work and I'm just handed what they don't want. We both know that this is the truth. Although it is not a holiday that we recognize, catholics like myself usually have plans on that day. But THANK EVERYBODY because this is helping to prove what always goes on here. Again, BEFORE YOU PUT ME ON THE SCHEDULE. PLEASE TELL ME FIRST. I'm sure the others knew before their name was put on the schedule. I'm sure everybody thinks it's very funny. HA! HA! We pulled another fast one on Margarita. I don't buy that you didn't think about it being Easter Sunday. Everybody lined up to volunteer for a day, so as to avoid Easter Sunday. It's OK. It's all GOOD. As far as Vickey is concerned, I

really don't care." Later on April 12, 2011, she wrote in another email: " I'm sorry that I even bothered to email you. As always you pretend to be innocent about what is going on. By this time I should learn to suck it up. That IS what you are trying to train me to do isn't it?? The plan is to get me angry but again THANK YOU EVERYBODY FOR PROVING MY POINT. This is normal operating procedure. I am very happy. It's all GOOD."

Plaintiff contends that rather than terminating her for sending these emails, defendant terminated her because of her national origin (Puerto Rican) and age (56). An employee may use either the direct method or the indirect method to establish a claim of discrimination so as to avoid summary judgment. Martino v. W.& S. Fin. Group, 715 F.3d 195, 201 (7th Cir. 2013). "Under the direct method, a plaintiff must present either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing." Id. at 201-02. (quotation marks and citation omitted). Under the indirect method, to survive summary judgment, plaintiff establishes a prima facie case of discrimination by showing (1) she is a member of a protected class; (2) she was meeting her employers legitimate expectations; (3) she suffered an adverse employment action: and (4) similarly situated employees outside the protected classes were treated more favorably. Smiley v. Columbia College Chicago, 714 F.3d 998, 1002 (7th Cir. 2013). If she satisfies the prima facie case, the burden shifts to defendant to identify a legitimate nondiscriminatory reason for the adverse action. Id. If defendant does so, plaintiff must produce sufficient evidence that the proffered reason was a pretext. Id. Plaintiff argues she has presented evidence to survive summary judgment under both the direct and indirect methods.

Plaintiff's evidence of discrimination is that she was the only Puerto Rican ultrasound technician and the oldest ultrasound technician. Only she was singled out in a meeting (which occurred in March 2009) by Griesman and told "[y]ou think everyone is out to get you." All of the other ultrasound technicians treated her in a hostile manner. One "almost got physical with her" and told her she should quit. One posted a poem about "firing trouble" on her own locker which was located directly above plaintiff's locker. Plaintiff once walked into an office and all the other ultrasound technicians who were in the room got up and left. Several of the ultrasound technicians called her "Maria" instead of "Margarita" even though she asked them not to. In 2009, when Hodge, one of the ultrasound technicians, was performing an ultrasound on an Hispanic patient, plaintiff asked if she had gotten a translator for the patient and Hodge responded "[i]f they are in this country, they need to learn to speak English." In September 2010, an environmental services employee, Kimbery Carroll, entered the office where plaintiff and Vickie Lloyd, another ultrasound technician were sitting. When Carroll left after picking up the garbage, she did not close the door. Plaintiff asked her: "Why aren't you closing the door? Is it because I'm Puerto Rican?" This incident led to the written warning issued to plaintiff on October 5, 2010. On January 22, 2010, plaintiff was attempting to move an ultrasound machine. Hodge obstructed plaintiff's attempt to move the machine.

During the April 14, 2010 meeting plaintiff had with Griesman and Hart, Hart told Griesman that some of his emails sounded like he was taunting plaintiff.

Before plaintiff was terminated in April 2011, plaintiff complained to Griesman because she had been scheduled to work on Easter Sunday and she had not been consulted before being scheduled. The other ultrasound technicians were informed that the weekend ultrasound would be on vacation and were able to volunteer for other days so as to avoid working on Easter. Because plaintiff did not have the advantage of this knowledge she was stuck with working on Easter.

Plaintiff performed the technical aspects of her job well at all times during her employment. After her termination, she was replaced by a woman who was in her twenties and was not Puerto Rican.

Plaintiff's claims fail when analyzed under the direct method. There is no direct evidence, such as an admission, of discriminatory intent in defendant's decision to terminate her. As to circumstantial evidence, on the age claim the only evidence is that plaintiff was the oldest ultrasound technician and she was replaced by a younger woman. This is simply insufficient for a rational jury to infer a discriminatory motive. Martino,

| STATEMENT - OPINION |
|---|

715 F.3d at 201-02.  On the national origin claim, the only circumstantial evidence is the fact plaintiff is Puerto Rican and Hodge's statement that people need to learn to speak English.  Hodge was not a decisionmaker in plaintiff's termination and the statement was made two years prior to plaintiff's termination.  Again, this is insufficient to support an inference of discriminatory motivation.  Id.

Under the indirect method, plaintiff has shown she is a member of two protected classes and suffered an adverse employment action (termination).  However, she has not presented any evidence that similarly situated employees outside the protected classes who engaged in similar conduct were treated more favorably.  She does not present evidence of any employees who wrote similar emails to their supervisors or otherwise communicated with their supervisors in a similar vein but were not terminated.

Further, plaintiff has not established that the proffered reason for her termination– emails that were perceived as negative, unprofessional and disrespectful towards her manager and peers– was a pretext for discrimination.[1]  While plaintiff did not believe the emails were disrespectful, she does not present any evidence that Griesman did not find them so.  "The focus of the pretext inquiry is whether the proffered reason is a lie."  Smiley, 714 F.3d at 1002.  The question is not whether the stated non-discriminatory reason is correct but whether it was the true reason the employer took the adverse action.  Id. at 1002-03.  Plaintiff has presented no evidence that the emails were not truly believed by Griesman to be disrespectful and that that was the reason he terminated her.

Plaintiff also argues she was subjected to a hostile work environment based on her national origin.  To establish a prima facie case of national origin hostile environment she must show (1) she was subjected to unwelcome harassment; (2) the harassment was based on her national origin; and (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere.  Lucero v. Nettle Creek School Corp., 566 F.3d 720, 731 (7th Cir. 2009).  Plaintiff fails to present any evidence that any actions taken by her co-workers were based on her national origin.  The record shows no references by anyone other than plaintiff to her Puerto Rican origins.  Hodge's comment about people in this country needing to learn to speak English is at most a stray comment derogatory to native Spanish speakers.  It was a one time event that happened in 2009.  Further, the incidents discussed above cited by plaintiff are not severe or pervasive.  Taking the evidence most favorably to plaintiff, it can be said her co-workers did not seem to like her very much.  But there is nothing to attribute that dislike to her national origin nor do any of the instances cited by plaintiff, nor all of them taken together, rise above the level of workplace pettiness.

For the reasons set forth above, defendant's motion for summary judgment is granted.  Judgment is entered in favor of defendant and against plaintiff.  This case is terminated.

---

1. Sometimes, as here, the analysis of the "meeting legitimate expectations" prong of the prima facie case merges with the pretext analysis.  Smiley, 714 F.3d at 1002.